UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| **VENETTA N. BENJAMIN,** | Civ. No. 2:12-cv-00774 (WJM) |
| Plaintiff, | |
| v. | **OPINION** |
| **EAST ORANGE POLICE DEPARTMENT,** *et al.*, | |
| Defendants. | |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Venetta N. Benjamin ("Venetta"), individually and as *administratix ad prosequendum* of the estate of Zara Malani-Lin Abdur-Raheem ("Zara"), brings this action against the City of East Orange (or the "City"), the East Orange Police Department ("EOPD"), and Shamsiddin Abdur-Raheem ("Abdur-Raheem"), asserting claims under 42 U.S.C. § 1983 (or "Section 1983") and various state laws. This matter comes before the Court on a motion to dismiss filed by the City of East Orange and the EOPD (collectively, the "East Orange Defendants"). There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, the East Orange Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part.

I.  BACKGROUND

This case arises out of an unimaginable tragedy. The facts set forth in the Complaint are described below.

In September 2007, Venetta entered into a romantic relationship with Defendant Abdur-Raheem. Compl. ¶ 12. In March 2008, the relationship became abusive. Compl. ¶ 13. Abdur-Raheem became violent and assaulted Venetta "too many times to count." *Id.* Abdur-Raheem's conduct took the form of threats, spitting, punching, kicking, slapping, and choking. *Id.*

In February 2009, Venetta learned that she was pregnant with a child conceived with Abdur-Raheem.[1]  Compl. ¶ 14.  On November 19, 2009, Venetta gave birth to Zara Malani-Lin Abdur-Raheem ("Zara").  Compl. ¶ 15.  The Complaint alleges that Venetta was Zara's sole custodial parent.  Compl. ¶ 16.  On January 31, 2010, Venetta advised Abdur-Raheem that she was terminating their relationship as a result of his abusive behavior.  Compl. ¶ 18.  In response, Abdur-Raheem assaulted Venetta and threatened to kill her if she ended the relationship.  Compl. ¶ 19.  Venetta then sought refuge with her sixty-year-old mother, Leno Benjamin ("Leno").  Compl. ¶¶ 20, 25.

In the two weeks that followed, Abdur-Raheem's threats against Venetta escalated and began to include threats against Zara.  Compl. ¶ 21.  On February 15, 2010, as a result of Abdur-Raheem's escalating threats and history of domestic violence, Venetta went to the EOPD to obtain a Domestic Violence Temporary Restraining Order ("Domestic Violence TRO") against Abdur-Raheem.  Compl. ¶ 22.  February 15, 2010 was President's Day.  Compl. ¶ 23.

The New Jersey Prevention of Domestic Violence Act provides that on "weekends, holidays and other times when the court is closed, a victim may file a complaint before a judge of the Family Part of the Chancery Division of the Superior Court or a municipal court judge who shall be assigned to accept complaints and issue emergency, *ex parte* relief in the form of temporary restraining orders."  N.J. Stat. Ann. § 2C:25-28(a); Compl. ¶ 35.  The State of New Jersey Domestic Violence Procedure Manual provides that, "under no circumstances should an officer prevent or discourage a victim from seeking immediate temporary relief merely because the domestic violence occurs after regular business hours."  Compl. ¶ 36; Compl. Ex. B, ECF No. 1-3.

On February 15, 2010, when Venetta went to the EOPD seeking a Domestic Violence TRO, the "EOPD personnel attending the front desk turned her away."  Compl. ¶ 23.  "Despite entreaties by Venetta for protection for herself and Zara," the front desk personnel told her that they could not help her because of the President's Day holiday.  *Id.*  The front desk personnel "failed to contact the on-duty judge assigned to handle application[s] for [Domestic Violence] TROs."  *Id.*  Instead, they directed her to report to the Superior Court the next day during regular business hours.[2]  *Id.*

---

[1] The Complaint states that Venetta learned of the pregnancy in February 2008 and gave birth in November 2009.  Based on the date of birth, the Court assumes that "2008" was a typographical error, and that Venetta actually learned of her pregnancy in February 2009.

[2] The Complaint does not identify any of the individuals working at the front desk, or name any of these individuals as defendants.  The Court pauses here to note that, although a plaintiff is not expected to know every detail of a case before discovery, a plaintiff is expected to do a basic investigation before filing a complaint.  The Court also notes that the burden is on a plaintiff to identify the proper defendants to an action, and this is typically done before, not after, filing a complaint.

On February 16, 2010, diligently following the EOPD's instructions, Venetta traveled to the Superior Court of New Jersey, Family Division, Essex County, to obtain a Domestic Violence TRO, leaving Zara in the care of her mother, Leno.  Compl. ¶¶ 24-25.  While Venetta was at the courthouse, Abdur-Raheem entered Leno's home and forcefully kidnapped Zara.  Compl. ¶ 26.  He got into a car with Zara and drove down the Garden State Parkway.  Compl. ¶ 27.  Abdur-Raheem stopped his car on the Alfred E. Driscoll Bridge.  Compl. ¶ 28.  Abdur-Raheem then took Zara out of the car and tossed Zara off the bridge into the frigid water of the Raritan River below.  *Id.*  This resulted in Zara's death.  *Id.*

On August 16, 2010, a State grand jury returned a six-count criminal indictment against Abdur-Raheem, charging him with kidnapping and murder, among other things.  Indictment, *State of New Jersey v. Shamsiddin Abdur-Raheem*, No. 10-08-00102-S.  In late 2012, Abdur-Raheem was convicted of murder and multiple other counts, and was thereafter sentenced to life in prison.  Abdur-Raheem is now an inmate at Middlesex County Jail.  Compl. ¶ 10.

On April 30, 2010, in accordance with the provisions of the New Jersey Tort Claims Act (or "NJTCA"), Plaintiff served a Notice of Claim on the City of East Orange and the EOPD.  Compl. ¶ 29. On February 9, 2012, Plaintiff filed the Complaint.  *See* ECF No. 1.  Abdur-Raheem filed a *pro se* Answer and asserted counterclaims against Plaintiff.  The City of East Orange and the EOPD now move to dismiss the Complaint.

## II.   LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted.  The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face."  *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008).  A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556).  While "[t]he plausibility standard is not akin to a

3

'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

### III.   DISCUSSION

Plaintiff's Complaint asserts 9 causes of action:

(1) Count 1:  42 U.S.C. § 1983 (Due Process Clause; Equal Protection Clause);
(2) Count 2:  42 U.S.C. § 1983 (Due Process Clause; Equal Protection Clause);
(3) Count 3:  42 U.S.C. § 1983 (Negligent Hiring, Training, and Supervision);
(4) Count 4:  Negligence;
(5) Count 5:  Gross Negligence;
(6) Count 6:  Intentional Infliction of Emotional Distress;
(7) Count 7:  New Jersey Survival Act (N.J.S.A. 2A:15-3);
(8) Count 8:  New Jersey Wrongful Death Act (N.J.S.A. 2A:31-1); and
(9) Count 9: 42 U.S.C. § 1988 ("Section 1988").

The Complaint asserts all 9 Counts against the East Orange Defendants. The Complaint asserts Counts 6, 7 and 8 against Defendant Abdur-Raheem. The East Orange Defendants have moved to dismiss all Counts. The Court will address the Section 1983 claims (Counts 1, 2 and 3); then the state law claims (Counts 4, 5, 6, 7, and 8); and then the Section 1988 claim (Count 9).

#### A.  Section 1983 Claims (Counts 1, 2 and 3)

The EOPD and the City of East Orange move to dismiss the Section 1983 claims against them on different grounds. The Court will address the arguments raised by the EOPD, followed by the arguments raised by the City of East Orange.

##### 1.   Claims Against the EOPD

The EOPD argues that it is not a proper defendant under Section 1983 because it is not a separate entity from the City of East Orange. The EOPD is correct.

It is well-established in this Circuit that courts "treat [a] municipality and its police department as a single entity for purposes of section 1983 liability." *See Bonenberger v. Plymouth Township*, 132 F.3d 20, 25 n.4 (3d Cir. 1997). For this reason, "[p]olice departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself." *Hernandez v. Borough of Palisades Park Police Dep't*, 58 Fed. App'x 909, 912 (3d Cir. 2003). When a Section 1983 action has been brought against a municipality and a police department, the police department must be dismissed, as "it is to the municipality that any liability must flow." *Millar v. Windsor Twp.*, No. 1:04-2529, 2005 U.S. Dist. LEXIS 17433, at *8-9 (M.D. Pa. June 24, 2005) (granting motion to dismiss police commission because it was not a proper party to the suit); *White v. City of Trenton*, 2009 U.S. Dist. LEXIS 43688, at *15-

16 (D.N.J. May 20, 2009) (police department was not a proper party to a 1983 action); *Miller v. City of E. Orange*, 509 F. Supp. 2d 452, 459 (D.N.J. 2007) (same). Because the EOPD is merely an administrative arm of the City of East Orange, the EOPD is not a proper defendant for purposes of Plaintiff's Section 1983 claims.

Accordingly, the Section 1983 claims asserted against the EOPD in Counts 1, 2 and 3 are dismissed with prejudice.

### 2. Claims Against the City of East Orange

In Counts 1, 2 and 3, Plaintiff asserts constitutional claims against the City of East Orange under 42 U.S.C. § 1983. Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to establish a Section 1983 claim, a plaintiff must (1) "demonstrate a violation of a right secured by the Constitution and the laws of the United States," and (2) "show that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). In addition, when a Section 1983 claim is asserted against a municipality, a plaintiff must show that the government official was acting pursuant to a municipal policy or custom. *See Monell v. New York City Dept. of Social Services*, 436 U.S. 658 (1978); *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).

In this case, the Complaint asserts three constitutional claims against the City of East Orange: (1) a claim for violation of the Due Process Clause, (2) a claim for violation of the Equal Protection Clause, and (3) a claim for "negligent hiring, training, supervision, and retention" ("failure to train" claim).[3] Compl. at 10. The Court will

---

[3] These three claims do not correspond with particular Counts of the Complaint. Counts 1 and 2 include allegations that Defendants violated the due process clause, violated the equal protection clause, improperly screened, hired, trained, and supervised their employees, failed to follow various state laws and policies, and "usurped a judicial function." Compl. at 6-9. There is no discernible difference between Count 1 and Count 2. Count 3 includes allegations of negligent

5

address each claim in turn to determine whether the facts alleged in the Complaint state a plausible claim for relief.

### a. Due Process Clause Claim

Plaintiff asserts a claim for violation of her and her daughter's constitutional right to due process. To properly state a Section 1983 claim for a due process violation against the City of East Orange, Plaintiff must allege that a person (1) acted under color of state law, (2) in a way that violated the constitutional right to due process, and (3) did so pursuant to a municipal policy or custom. There is no dispute that the EOPD front desk personnel were acting under color of state law. For the reasons set forth below, the Court finds that Plaintiff failed to adequately allege that there was a due process violation. The Court further finds that Plaintiff failed to adequately allege that the EOPD front desk personnel were acting pursuant to a municipal policy or custom. Each finding is explained, in detail, below.

#### i. Plaintiff Failed to State a Claim for a Due Process Violation

"Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment." *Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368 (3d Cir. 1992)). Ordinarily, the Due Process Clause does not impose an affirmative obligation on the state to protect its citizens from private violence. *DeShaney v. Winnebago County Dept. of Soc. Servs.*, 489 U.S. 189, 195-96 (1989). For example, in *DeShaney*, the Supreme Court held that a state had no constitutional duty to protect a child, Joshua, from attacks by his father even though the state had received reports of the father physically abusing the child. *Id.* at 191. The Court rejected the proposition that states have a general constitutional duty to protect their citizens from private violence. *Id.* at 198-201. The Court noted that each previous case in which it had found a constitutional duty to protect had involved a person taken into custody by a state, and therefore a situation in which the state had taken an affirmative act which rendered an individual less able to care for himself. *Id.*

A plaintiff may state a due process claim against a state actor in certain cases where there is an "intermingling between state conduct and private violence." *Kneipp v. Tedder*, 95 F.3d 1199, 1207 (3d Cir. 1996). This complement to the *DeShaney* holding has come to be known as the "state-created danger doctrine." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). Under the state-created danger doctrine, a plaintiff states a claim for a constitutional violation if the facts alleged in the complaint support the following four elements:

---

hiring, training, supervision, and retention, but does not identify any underlying constitutional rights that were violated. *See* Compl. ¶ 52.

> (1) the harm ultimately caused was foreseeable and fairly direct;
> (2) a state actor acted with a degree of culpability that shocks the conscience;
> (3) a relationship between the state and the plaintiff existed such that the plaintiff was a foreseeable victim of the defendant's acts. . . as opposed to a member of the public in general; and
> (4) a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all.

*Brown v. Sch. Dist. of Philadelphia*, 456 F. App'x 88, 91 (3d Cir. 2011) (quoting *Sanford v. Stiles*, 456 F.3d 298, 304-05 (3d Cir. 2006)). In this case, the facts alleged in the Complaint support the first and third element, but do not support the second and fourth element.

The first element of the state-created danger test requires a plaintiff to plead that "the harm ultimately caused was a foreseeable and . . . fairly direct result of the state's actions." *Morse v. Lower Merion School Dist.*, 132 F.3d 902, 908 (3d Cir. 1997). "To adequately plead foreseeability . . . we require a plaintiff to allege an awareness on the part of the state actors that rises to [the] level of actual knowledge or an awareness of risk that is sufficiently concrete to put the actors on notice of the harm." *Phillips*, 515 F.3d at 238. "Once the foreseeability element of the state-created danger test has been determined, the complaint must also allege that the attack or harm is a 'fairly direct' result of the defendant's acts." *Id.* at 239. In evaluating whether the harm is fairly direct, courts look at whether the harm occurred to a specific individual, or whether the harm occurred to a random individual with no connection to the harm-causing party. *See Phillips*, 515 F.3d at 239; *Morse*, 132 F.3d at 909.

The first element of the state-created danger test is easily met in this case. First, the harm ultimately caused was a foreseeable result of the state's actions: an act of domestic violence is an extremely foreseeable consequence of not allowing someone to obtain a Domestic Violence TRO. In addition, Plaintiff alleges that she told the EOPD front desk personnel that she and Zara needed protection from Abdur-Raheem. Thus, the Complaint alleges that the front desk personnel had actual knowledge of a concrete risk. Second, the harm ultimately caused was a fairly direct result of the state's actions. This was not a random act of violence. Venetta and Zara had a direct familial connection to Abdur-Raheem, and Abdur-Raheem targeted them for reasons arising out of their relationships with him. Thus, viewing the allegations of the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts supporting the first element of the state-created danger test.

The second element of the state-created danger test requires a plaintiff to plead that "a state actor acted with a degree of culpability that shocks the conscience." *Bright v. Westmoreland County*, 443 F.3d 276, 281 (3d Cir. 2006). The Third Circuit has

explained that "there is a continuum upon which the degree of culpability required to establish such a claim must be measured." *Phillips*, 515 F.3d at 240 (citing *Sanford v. Stiles*, 456 F.3d 298, 309 (3d Cir. 2006)). Where, as here, "the circumstances require a state actor to make something less exigent than a 'split-second' decision but more urgent than an 'unhurried judgment,'" a court must consider whether the state actor acted with "gross negligence or arbitrariness that indeed shocks the conscience." *Phillips*, 515 F.3d at 241 (quoting *Sanford*, 456 F.3d at 306).

With respect to the second element of the state-created danger test, Plaintiff has not alleged enough facts to allow the Court to make a determination of arbitrariness or gross negligence. The Complaint provides a one-sentence description of Venetta's interaction with the EOPD front desk personnel, stating that, "[d]espite entreaties by Venetta for protection for herself and Zara, EOPD personnel attending the front desk turned her away." Compl. ¶ 23. The Complaint provides no information about what Venetta actually told the EOPD, how long she was at the station, what the EOPD actually said to her, etc. This one descriptive sentence does not provide the Court with enough information to determine whether the EOPD's actions were so arbitrary that they were conscience-shocking. Thus, the Court finds that Plaintiff has not alleged sufficient facts to support the second element of the state-created danger test.

The third element of the state-created danger test requires a plaintiff to plead that "a relationship between the state and the plaintiff existed such that 'the plaintiff was a foreseeable victim of the defendant's acts' . . . as opposed to a member of the public in general." *Bright*, 443 F.3d at 281 (3d Cir. 2006) (quoting *Kneipp*, 95 F.3d at 1209, n.22). To adequately allege such a relationship, a plaintiff need not plead facts that show the type of "special relationship" described in *DeShaney*. *Morse v. Lower Merion Sch. Dist.*, 132 F.3d 902, 912 (3d Cir. 1997). Instead, the relationship that must be established between the state and the plaintiff can be "merely" that the plaintiff was a foreseeable victim. *Rivas v. City of Passaic*, 365 F.3d 181, 202 (3d Cir. 2004).

The third element of the state-created danger test has been met here. Venetta and Zara were specifically mentioned in Abdur-Raheem's threats of violence and were specifically targeted for retribution by Abdur-Raheem. Accordingly, Venetta and Zara were foreseeable victims, not random members of the public. Thus, viewing the allegations of the Complaint in the light most favorable to Plaintiff, the Court finds that Plaintiff has sufficiently alleged facts supporting the third element of the state-created danger test.

The fourth element of the state-created danger test requires a plaintiff to plead that "a state actor affirmatively used his or her authority in a way that created a danger to the citizen or that rendered the citizen more vulnerable to danger than had the state not acted at all." *Bright*, 443 F.3d at 281. The Third Circuit has stressed that this requires "affirmative acts" by state actors, not inactions or omissions. *D.R. by L.R. v. Middle Bucks Area Vo. Tech. School*, 972 F.2d 1364, 1374 (3d Cir. 1992); *see also Bright*, 443

8

F.3d at 282 ("It is misuse of state authority, rather than a failure to use it, that can violate the Due Process Clause."). The Third Circuit has acknowledged that the line between action and inaction is not always clear, but emphasized that it has never found a state-created danger claim to be meritorious without an allegation and subsequent showing that state authority was affirmatively exercised in some way. *Bright*, 443 F.3d at 282; *Phillips*, 515 F.3d at 235-36. In addition to pleading an affirmative act, a "complaint must also plead a direct causal relationship between the affirmative act and plaintiff's harm." *Phillips*, 515 F.3d at 236-37; *Kaucher v. County of Bucks*, 455 F.3d 418, 432 (3d Cir. 2006).

With respect to the fourth element of the state-created danger test, Plaintiff has adequately pled causation, but has not alleged facts sufficient to show an affirmative act by state actors. In this case, causation is evident. The EOPD improperly required Venetta to go out a second time to obtain a Domestic Violence TRO. Abdur-Raheem attacked in the precise minutes that Venetta was in court following the EOPD's improper instructions. Based on the allegations in the Complaint, it is extremely plausible that a different outcome would have resulted if Venetta had been granted a TRO hearing on the night of February 15, 2010, or if Zara and Leno had not been home alone on February 16, 2010. However, the Complaint insufficiently pleads that there was an affirmative act taken by state actors. In fact, in the Complaint, Plaintiff frames Venetta's interaction with the EOPD as a failure to act. *See, e.g.*, Compl. ¶ 23 (EOPD "failed to contact the on-duty judge assigned to handle application[s] for DV-TROs"); Compl. ¶ 38(e) (Defendants "fail[ed] to follow applicable law"). Absent a showing that "state authority was affirmatively exercised in some fashion," Plaintiff cannot state a claim for a due process clause violation. *Phillips*, 515 F.3d at 236.

That said, circuit courts in these types of due process cases have repeatedly held that district courts must grant plaintiffs an opportunity to amend their claims to allege an affirmative act by state actors. *See Phillips*, 515 F.3d at 236 (holding that "the District Judge erred when he dismissed the complaint without offering [plaintiff] the opportunity to amend her complaint" to "allege an affirmative action, rather than [an] inaction or omission"); *Freeman v. Ferguson*, 911 F.2d 52, 55 (8th Cir. 1990) (plaintiff in a domestic violence case must be given leave to amend her complaint to plead an affirmative act by state actors). Accordingly, Plaintiff will be granted leave to amend her due process claim to allege specific, concrete facts demonstrating that: (1) the EOPD front desk personnel acted with gross negligence or arbitrariness that shocks the conscience; and that (2) the EOPD front desk personnel affirmatively used their authority in a way that created a danger to Venetta and Zara or rendered Venetta and Zara more vulnerable to danger than had they not acted at all.

### ii. Plaintiff Failed to Allege a Municipal Policy or Custom

The Supreme Court enunciated the rule for imposing liability against a municipality under section 1983 in *Monell v. New York City Dept. of Social Serv.*, 436 U.S. 658 (1978). The Court held in *Monell* that:

> [A] local government may not be sued under § 1983 for an injury inflicted solely by its employees or agents. Instead, it is when execution of a government's policy or custom, whether made by its lawmakers or by those whose edicts or acts may fairly be said to represent official policy, inflicts the injury that the government as an entity is responsible under § 1983.

*Id.* at 694. The Third Circuit recognizes that there is a "two-path track to municipal liability under § 1983," either through government policy or custom. *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 1996) (citing *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986)). "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict." *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur*, 475 U.S. at 481). "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law." *Andrews*, 895 F.2d at 1480 (quoting *Monell*, 436 U.S. at 690). Custom "may also be established by evidence of knowledge and acquiescence." *Beck*, 89 F.3d at 971; *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

In this case, Plaintiff fails to state a claim for municipal liability against the City of East Orange because Plaintiff fails to allege a policy or custom. Although the Complaint sets forth a single instance in which the EOPD failed to contact the on-duty judge for someone seeking an after-hours TRO, the Complaint does not allege that it was the custom of the EOPD front desk personnel to turn away domestic violence victims after regular business hours. Further, the Complaint does not allege that policymakers knew about or acquiesced to the custom of requiring domestic violence victims to return during regular business hours. The Complaint does make some general, conclusory statements that there was a "*de facto* policy by defendants EOPD and East Orange acquiescing to [unspecified] unconstitutional acts and violations of civil rights." Compl. ¶ 52. However, these statements fall short of the specific factual allegations necessary to give rise to a plausible claim that EOPD personnel turned victims away as a regular practice. Accordingly, Plaintiff failed to state a claim for a due process violation against the City of East Orange, and Plaintiff's due process claim is therefore dismissed without prejudice.

### b. Equal Protection Clause Claim

Plaintiff asserts a claim for violation of her and her daughter's constitutional right to equal protection. The Court finds that Plaintiff failed to state a constitutional violation and failed to state a policy or custom.

To bring a successful Section 1983 claim for a denial of equal protection, plaintiffs must prove the existence of purposeful discrimination. *Batson v. Kentucky*, 476 U.S. 79, 93 (1986). In other words, plaintiffs "must demonstrate that they 'received different treatment from that received by other individuals similarly situated.'" *Andrews*, 895 F.2d at 1478 (quoting *Kuhar v. Greensburg-Salem School Dist.*, 616 F.2d 676, 677 n.1 (3d Cir. 1980)). In addition, there must be some affirmative conduct by the supervisor that played a role in the discrimination. *Rizzo v. Goode*, 423 U.S. 362, 377 (1976). In this case, the Complaint includes no allegations whatsoever of purposeful discrimination by supervisors or subordinates. The Complaint also does not include any allegations that there was a policy or custom of discrimination, as required to hold the municipality liable.

Accordingly, Plaintiff's equal protection claim is dismissed without prejudice.

### c. Failure to Train Claim

Plaintiff asserts a Section 1983 claim against the City of East Orange on behalf of herself and her daughter for the City's failure to train. The Court finds that Plaintiff failed to state a Section 1983 claim under a failure to train theory.

In addition to alleging that a person (1) acted under color of state law, (2) in a way that violated a constitutional right, (3) pursuant to a municipal policy or custom, a plaintiff asserting a failure to train claim must allege (4) deliberate indifference, and (5) causation. *Kneipp*, 95 F.3d at 1212-13 (citing *City of Canton v. Harris*, 489 U.S. 378 (1989)). In *City of Canton*, the Supreme Court held that "the inadequacy of police training may serve as the basis for section 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police came into contact." *City of Canton*, 489 U.S. at 388. The Supreme Court reasoned that "the failure to provide proper training may fairly be said to represent a policy for which the city is responsible, and for which the city may be held liable if it actually causes injury." *City of Canton*, 489 U.S. at 390. In this case, the Complaint does not allege any facts supporting the conclusion that the City of East Orange failed to properly train its police officers and staff. In addition, this claim cannot go forward because Plaintiff failed to state a claim for an underlying constitutional violation.

Accordingly, Plaintiff's failure to train claim is dismissed without prejudice.

### d. Plaintiff is Granted Leave to Amend

Courts have long held that, "if a complaint is vulnerable to 12(b)(6) dismissal, a district court must permit a curative amendment, unless an amendment would be inequitable or futile." *Grayson v. Mayview State Hosp.*, 293 F.3d 103, 108 (3d Cir. 2002) (citing *Shane v. Fauver*, 213 F.3d 113, 116 (3d Cir. 2000)). In this case, permitting Plaintiff to amend her Section 1983 claims would not be inequitable or futile. Accordingly, Plaintiff is granted leave to amend her Section 1983 claims against the City of East Orange.

### B. State Claims (Counts 4, 5, 6, 7, and 8)

Plaintiff asserts state law claims against the East Orange Defendants for Negligence (Count 4); Gross Negligence (Count 5); Intentional Infliction of Emotional Distress (Count 6); the New Jersey Survival Act (N.J.S.A. 2A:15-3) (Count 7); and the New Jersey Wrongful Death Act (N.J.S.A. 2A:31-1) (Count 8). The East Orange Defendants raise three arguments in support of their motion to dismiss these Counts: (1) the East Orange Defendants are entitled to sovereign immunity on all the state law claims; (2) Plaintiff failed to plead causation, which is necessary for Counts 4, 5, 7, and 8; and (3) Plaintiff failed to plead intentional conduct, which is necessary for Count 6. The Court will address each argument in turn.

### a. Sovereign Immunity (Counts 4, 5, 6, 7, and 8)

The East Orange Defendants move to dismiss Counts 4, 5, 6, 7, and 8, arguing that they are entitled to sovereign immunity under state law. The Court disagrees.

The New Jersey Tort Claims Act ("NJTCA") governs public entity liability. N.J. Stat. Ann. § 59:1-1 (2013). Pursuant to N.J. Stat. Ann. § 59:2-2, a "public entity is liable for injury proximately caused by an act or omission of a public employee within the scope of his employment in the same manner and to the same extent as a private individual under like circumstances."[4] Pursuant to N.J. Stat. Ann. § 59:5-4, "[n]either a public entity nor a public employee is liable for failure to provide police protection." However, the New Jersey Appellate Division has held that "N.J.S.A. 59:5-4 does not insulate police officers from [the] unfortunate results of their negligently executed ministerial duties." *Suarez v. Dosky*, 171 N.J. Super. 1, 10 (App. Div. 1979); *see also Massachi v. AHL Services, Inc.*, 396 N.J. Super. 486, 507 (App. Div. 2007). The Appellate Division "distinguished between the performance of low-level ministerial tasks . . . and higher level policy decisions concerning the number of officers a town should employ and how police officers and equipment should be distributed." *Massachi*, 396

---

[4] The NJTCA requires a claimant to serve a notice of tort claim on a public entity before filing suit to give the public entity six months to conduct an administrative review of the claim. N.J.S.A. § 59:8–8. There is no dispute that Plaintiff timely served her Notice of Claim on the East Orange Defendants and waited more than six months to file suit.

N.J. Super. at 498.  The Appellate Division held that only higher level policy decisions are entitled to immunity.  *Id.*  Applying this standard to the facts of the case in *Massachi*, the Appellate Division held that the "failure of a 9–1–1 operator to abide by the public entity's written guidelines for responding to emergencies constitutes the negligent performance of a ministerial task," and thus, "N.J.S.A. 59:5–4 provides no immunity." *Massachi*, 396 N.J. Super. at 507.

In this case, the East Orange Defendants are not entitled to immunity because the Complaint alleges that the EOPD front desk personnel negligently performed a ministerial task.  The New Jersey Prevention of Domestic Violence Act and the State of New Jersey Domestic Violence Procedure Manual are the City and the EOPD's written guidelines for responding to domestic violence complaints.  Both sources provide explicit instructions for addressing after-hours requests for Domestic Violence TROs.  *See* N.J. Stat. Ann. § 2C:25-28(a); Compl. ¶¶ 35-36; Compl. Ex. B.  The Complaint alleges that the EOPD front desk personnel failed to abide by these written guidelines by turning away someone seeking a Domestic Violence TRO after regular business hours.  Referring domestic violence complaints to an on-duty judge is a ministerial task that does not require the exercise of judgment.  It is not a high level policy decision comparable to police staffing.  Thus, the East Orange Defendants are not entitled to immunity under the NJTCA.

Accordingly, the East Orange Defendants' motion to dismiss Counts 4, 5, 6, 7, and 8 on the basis of sovereign immunity is denied.

### b.  Causation (Counts 4, 5, 7, and 8)

The East Orange Defendants move to dismiss Counts 4, 5, 7, and 8, arguing that Plaintiff failed to plead causation.  The Court disagrees.

As discussed above, the Complaint adequately pleads causation.  Abdur-Raheem attacked in the precise minutes that Venetta was in court following the EOPD's improper instructions.  Based on the allegations in the Complaint, it is certainly plausible that a different outcome would have resulted if Venetta had been granted a TRO hearing on the night of February 15, 2010, or if Zara and Leno had not been home alone on February 16, 2010.  Further, even the cases cited by the East Orange Defendants hold that dismissal based on causation is inappropriate:  these cases hold that causation is considered a classic fact question, and that ***summary judgment*** may be granted on causation only in "highly extraordinary" circumstances.  *See Fluehr v. City of Cape May*, 159 N.J. 532, 543 (1999) ("Proximate cause . . . may be removed from the factfinder in the highly extraordinary case in which reasonable minds could not differ on whether that issue has been established"); *Anderson v. Sammy Redd & Associates*, 278 N.J. Super. 50, 56 (App. Div. 1994) ("Questions of the breach of the duty, foreseeability and proximate cause were, under the circumstances, peculiarly within the competence of a jury. . . .  Therefore, summary judgment was ***inappropriately*** granted.") (emphasis added).

Accordingly, the East Orange Defendants' motion to dismiss Counts 4, 5, 7, and 8 for failure to plead causation is denied.

### c. Intentional Infliction of Emotional Distress (Count 6)

The East Orange Defendants move to dismiss Count 6, arguing that Plaintiff failed to plead any intentional conduct on the part of the state actors. The Court agrees. "[T]o establish a claim for intentional infliction of emotional distress, the plaintiff must establish intentional and outrageous conduct by the defendant, proximate cause, and distress that is severe." *Buckley v. Trenton Saving Fund Soc.*, 111 N.J. 355, 366 (1988). In this case, Plaintiff failed to plead any facts suggesting that the state actors intended to cause her emotional distress. Accordingly, the East Orange Defendants' motion to dismiss Count 6 is granted, and Count 6 is dismissed with prejudice.

### C. Section 1988 Claim (Count 9)

In Count 9, Plaintiff asserts a claim for attorneys' fees under 42 U.S.C. § 1988. However, it is well-settled that Section 1988 does not create an independent cause of action. *Moor v. Alameda County*, 411 U.S. 693, 702 (1973) (holding that Section 1988 does not independently create a federal cause of action); *Reed v. Philadelphia Hous. Auth.*, 372 F. Supp. 686, 698 (E.D. Pa. 1974) ("The Supreme Court extensively reviewed the legislative history of § 1988 in *Moor*, and concluded that the provision was remedial only, and did not create an independent federal cause of action"). Accordingly, the motion to dismiss Count 9 is granted, and Count 9 is dismissed with prejudice.

### IV. CONCLUSION

For the reasons stated above, the East Orange Defendants' motion to dismiss is **GRANTED** in part, and **DENIED** in part. The motion to dismiss is denied with respect to Counts 4, 5, 7, and 8. The motion to dismiss is granted with respect to Counts 1, 2, 3, 6, and 9. As to the EOPD, Counts 1, 2 and 3 are dismissed with prejudice. As to the City of East Orange, Counts 1, 2, and 3 are dismissed without prejudice. Counts 6 and 9 are dismissed with prejudice as to both the City of East Orange and the EOPD. An appropriate order follows.

/s/ William J. Martini
**WILLIAM J. MARTINI, U.S.D.J.**

**Date: March 28, 2013**