## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| **VENETTA N. BENJAMIN,**<br><br>**Plaintiff,**<br><br>v.<br><br>**EAST ORANGE POLICE DEPARTMENT,** *et al.*,<br><br>**Defendants.** | Civ. No. 2:12-cv-00774 (WJM)<br><br><br>**OPINION** |

**WILLIAM J. MARTINI, U.S.D.J.:**

Plaintiff Venetta N. Benjamin ("Venetta"), individually and as *administratix ad prosequendum* of the estate of Zara Malani-Lin Abdur-Raheem ("Zara"), brings this action against the City of East Orange (or the "City"), the East Orange Police Department ("EOPD"), and Shamsiddin Abdur-Raheem ("Abdur-Raheem"), asserting claims under 42 U.S.C. § 1983 (or "Section 1983") and various state laws. This matter comes before the Court on the City of East Orange's motion to dismiss Count 1 of Plaintiff's First Amended Complaint. Additionally, Plaintiff has filed a cross-motion seeking to file a second amended complaint. There was no oral argument. Fed. R. Civ. P. 78(b). For the reasons set forth below, both the City of East Orange's motion to dismiss and Plaintiff's cross-motion to amend are **DENIED**.

## I.    BACKGROUND

This case arises out of an unimaginable tragedy. The facts set forth in the First Amended Complaint are described below.

In September 2007, Venetta entered into a romantic relationship with Defendant Abdur-Raheem. Am. Compl. ¶ 10. The relationship was abusive. Am. Compl. ¶¶ 11-17. Abdur-Raheem became violent and assaulted Venetta "too many times to count." Am. Compl. ¶ 13. Abdur-Raheem's conduct took the form of threats, spitting, punching, kicking, slapping, and choking. *Id.*

In March 2009, Venetta learned that she was pregnant with a child conceived with Abdur-Raheem. Am. Compl. ¶ 15. On November 19, 2009, Venetta gave birth to Zara.

*Id.*  The Complaint alleges that Venetta was Zara's sole custodial parent.  Am. Compl. ¶ 5.  On January 31, 2010, while Venetta was trying to leave the apartment that they shared, Abdur-Raheem assaulted Venetta and threatened to kill her if she ended the relationship.  Am. Compl. ¶ 16.  Venetta then sought refuge with her sixty-year-old mother, Leno Benjamin ("Leno").  *Id.*  The next day, Venetta advised Abdur-Raheem that she was terminating their relationship as a result of his abusive behavior.  *Id.*

In the two weeks that followed, Abdur-Raheem's threats against Venetta escalated and began to include threats against Zara.  Am. Compl. ¶ 17.  On February 15, 2010, as a result of Abdur-Raheem's escalating threats and history of domestic violence, Venetta went to the EOPD to obtain a Domestic Violence Temporary Restraining Order ("Domestic Violence TRO") against Abdur-Raheem.  Compl. ¶ 18.  February 15, 2010 was President's Day.  Compl. ¶ 37.

The New Jersey Prevention of Domestic Violence Act provides that on "weekends, holidays and other times when the court is closed, a victim may file a complaint before a judge of the Family Part of the Chancery Division of the Superior Court or a municipal court judge who shall be assigned to accept complaints and issue emergency, *ex parte* relief in the form of temporary restraining orders."  N.J. Stat. Ann. § 2C:25-28(a); Am. Compl. ¶ 33.  The State of New Jersey Domestic Violence Procedure Manual provides that, "under no circumstances should an officer prevent or discourage a victim from seeking immediate temporary relief merely because the domestic violence occurs after regular business hours."  Am. Compl. ¶ 34; Am. Compl. Ex. B, ECF No. 20-1.

On February 15, 2010, Venetta and her sister, Rayon R. Benjamin, went to the East Orange Police Department (the "EOPD") seeking a Domestic Violence TRO.  Am. Compl. ¶ 41.  Venetta provided the front desk personnel with details of her turbulent relationship with Abdur-Raheem, including the history of domestic violence.  *Id.*  For instance, she told the front desk personnel about the events on the evening of January 31, 2010, including the fact that Abdur-Raheem "grabbed [her], threw her up against the wall, slammed her head against the wall, and choked her while telling her "you'll be better off dead."  Am. Compl. ¶ 42.  She explained that Abdur-Raheem "then pinned [her] to the ground and choked [sic] while telling her 'I should kill you because you're trying to take my family away from me.'"  *Id.*  She also told the front desk personnel about Abdur-Raheem's subsequent threats against her and Zara, such as "things are going to come to an end for you and Zara" and "you need to stop talking to other people because it is only going to get worse for you and Zara."  Am. Compl. ¶ 43.  Her "entreaties to the front desk personnel for help went on for approximately 45 minutes."  Am. Compl. ¶ 41.  Rayon also tried to convince the front desk personnel of the gravity of the situation.  *Id.*

In response, the EOPD front desk personnel told Venetta that they could not help her because of the President's Day holiday.  Am. Compl. ¶ 21.  The front desk personnel

informed her that "under the way the law worked on a holiday such as President's Day, no resources were allocated for the consideration of a temporary restraining order." *Id.* "They further explained that the way the law worked, individuals such as Venetta had to report to the Superior Court on the day following a holiday to seek a temporary restraining order." *Id.*

On February 16, 2010, diligently following the EOPD's instructions, Venetta traveled to the Superior Court of New Jersey, Family Division, Essex County, to obtain a Domestic Violence TRO, leaving Zara in the care of her mother, Leno.  Am. Compl. ¶¶ 22-23.  While Venetta was at the courthouse, Abdur-Raheem entered Leno's home and forcefully kidnapped Zara.  Am. Compl. ¶ 24.  He got into a car with Zara and drove down the Garden State Parkway.  Am. Compl. ¶ 25.  Abdur-Raheem stopped his car on the Alfred E. Driscoll Bridge.  Am. Compl. ¶ 26.  Abdur-Raheem then took Zara out of the car and tossed Zara off the bridge into the frigid water of the Raritan River below.  *Id.* This resulted in Zara's death.  *Id.*

On August 16, 2010, a State grand jury returned a six-count criminal indictment against Abdur-Raheem, charging him with kidnapping and murder, among other things. Indictment, *State of New Jersey v. Shamsiddin Abdur-Raheem*, No. 10-08-00102-S.  In late 2012, Abdur-Raheem was convicted of murder and multiple other counts, and was thereafter sentenced to life in prison.  Abdur-Raheem is now an inmate at the New Jersey State Prison.  Am. Compl. ¶ 8.

On April 30, 2010, in accordance with the provisions of the New Jersey Tort Claims Act, Plaintiff served a Notice of Claim on the City of East Orange and the EOPD. Compl. ¶ 27.  On February 9, 2012, Plaintiff filed the Complaint.  Abdur-Raheem filed a *pro se* Answer and asserted counterclaims against Plaintiff.  The City of East Orange and the EOPD then filed a motion to dismiss the Complaint, which the Court partially granted and partially denied.  *See Benjamin v. E. Orange Police Dep't*, 937 F. Supp. 2d 582 (D.N.J. 2013).  Plaintiff subsequently filed the First Amended Complaint.  The City now moves to dismiss Count 1 of the First Amended Complaint.  In response to the City's motion, Plaintiff filed a cross-motion to file a second amended complaint seeking to add a factual allegation to Count 1.

## II.    LEGAL STANDARD

Federal Rule of Civil Procedure 12(b)(6) provides for the dismissal of a complaint, in whole or in part, if the plaintiff fails to state a claim upon which relief can be granted. The moving party bears the burden of showing that no claim has been stated.  *Hedges v. United States*, 404 F.3d 744, 750 (3d Cir. 2005).  In deciding a motion to dismiss under Rule 12(b)(6), a court must take all allegations in the complaint as true and view them in the light most favorable to the plaintiff.  *See Warth v. Seldin*, 422 U.S. 490, 501 (1975); *Trump Hotels & Casino Resorts, Inc. v. Mirage Resorts Inc.*, 140 F.3d 478, 483 (3d Cir. 1998).

Although a complaint need not contain detailed factual allegations, "a plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Thus, the factual allegations must be sufficient to raise a plaintiff's right to relief above a speculative level, such that it is "plausible on its face." *See id.* at 570; *see also Umland v. PLANCO Fin. Serv., Inc.*, 542 F.3d 59, 64 (3d Cir. 2008). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 129 S.Ct. 1937, 1949 (2009) (citing *Twombly*, 550 U.S. at 556). While "[t]he plausibility standard is not akin to a 'probability requirement' . . . it asks for more than a sheer possibility." *Iqbal*, 129 S.Ct. at 1949 (2009).

## III.   DISCUSSION

Count 1 of the First Amended Complaint asserts a Section 1983 claim against the City of East Orange for violating Plaintiff's constitutional right to due process. The City argues that Plaintiff failed to allege a municipal policy or custom, as required by *Monell v. Department of Social Services of the City of New York*, 436 U.S. 658 (1978). The Court disagrees.

Section 1983 provides that:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

42 U.S.C. § 1983. Section 1983 does not, by its own terms, create substantive rights; it provides only remedies for deprivations of rights established elsewhere in the Constitution or federal laws. *Baker v. McCollan*, 443 U.S. 137, 144 n.3 (1979); *Mark v. Borough of Hatboro*, 51 F.3d 1137, 1141 (3d Cir. 1995). In order to establish a Section 1983 claim, a plaintiff must (1) "demonstrate a violation of a right secured by the Constitution and the laws of the United States," and (2) "show that the alleged deprivation was committed by a person acting under color of state law." *Moore v. Tartler*, 986 F.2d 682, 685 (3d Cir. 1993). A violation of the Due Process Clause of the Fourteenth Amendment, as is asserted here, can provide the basis for a claim under Section 1983. *See Phillips v. County of Allegheny*, 515 F.3d 224, 235 (3d Cir. 2008) (citing *D.R. v. Middle Bucks Area Vocational Technical School*, 972 F.2d 1364, 1368 (3d

Cir. 1992)) ("Individuals have a constitutional liberty interest in personal bodily integrity that is protected by the Due Process Clause of the Fourteenth Amendment.").

In addition, when a Section 1983 claim is asserted against a municipality, a plaintiff must show that the government official was acting pursuant to a municipal policy or custom.  *See Monell*, 436 U.S. at 694; *Pembaur v. City of Cincinnati*, 475 U.S. 469 (1986).  "Policy is made when a 'decisionmaker possess[ing] final authority to establish municipal policy with respect to the action' issues an official proclamation, policy, or edict."  *Andrews v. City of Philadelphia*, 895 F.2d 1469, 1480 (3d Cir. 1990) (quoting *Pembaur*, 475 U.S. at 481).  "A course of conduct is considered to be a 'custom' when, though not authorized by law, 'such practices of state officials [are] so permanent and well settled' as to virtually constitute law."  *Andrews*, 895 F.2d at 1480 (quoting *Monell*, 436 U.S. at 690).  Custom "may also be established by evidence of knowledge and acquiescence."  *Beck v. City of Pittsburgh*, 89 F.3d 966, 971 (3d Cir. 2003); *Fletcher v. O'Donnell*, 867 F.2d 791, 793 (3d Cir. 1989).

In this case, Plaintiff has sufficiently alleged a policy or custom.  The First Amended Complaint states that the front desk personnel told Venetta that "under the way the law worked on a holiday such as President's Day, no resources were allocated for the consideration of a temporary restraining order."  Am. Compl ¶ 21.  They also informed her that "the way the law worked, individuals such as Venetta had to report to the Superior Court on the day following a holiday to seek a temporary restraining order."  *Id.* These allegations suggest that turning away domestic violence victims after hours was a permanent and well-settled practice.  *See Monell*, 436 U.S. at 690.  The Court will therefore deny the motion to dismiss.

Furthermore, because the Court finds that the First Amended Complaint contains sufficient factual allegations to state a claim under Count 1, a second amended complaint is unnecessary.  Plaintiff's cross-motion is thus denied as moot.

## IV.   CONCLUSION

For the reasons stated above, the City of East Orange's motion to dismiss Count 1 of the Amended Complaint and Plaintiff's cross-motion to file a second amended complaint are both **DENIED**.  An appropriate order follows.

 

 

 

                                /s/ William J. Martini
                              **WILLIAM J. MARTINI, U.S.D.J.**

**Date: February 20, 2014**